Good morning, Your Honors, and may it please the Court, Maurice Pessa and here with me is Arnold Peter. Together we represent the appellants in this matter. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. Yes, go ahead. Your Honor, as an initial matter, I would like to bring briefly to this Court's attention the following undisputed facts. Number one, that the Center for Creative Photography was not created by any state legislative act, but rather is a creature of a private contract between private contracting entities that the state concedes have no relation to the university. Next, the Center for Creative Photography... Wait a minute. There was one private contracting agency, but the other one is, according to the undisputed facts, a subdivision of the University of Arizona Library, no? Well, the Center for Creative Photography was birthed from a contract that was executed between Ansel Adams himself, the Ansel Adams Publishing Rights Trust, and the University of Arizona Foundation, which is a 501c3 in which the state concedes has no nexus to the board. The board's position is that the CCP is part of the university library system, but that alone... But I thought that was also an undisputed fact, or you alleged it. I thought the complaint says that, no? The initial First Amendment complaint says that the CCP perhaps is affiliated with the libraries of the university. I'm not sure what the exact wording in the complaint was, but that fact alone would not make the CCP an instrumentality of the state. Is the CCP a 501c3 in and of itself? No, it's not. So it's an arm of a different 501c3? The CCP... What is it? Sorry, Your Honor. The CCP is something that we would consider to be a hybrid entity under some of the cases. It is not mentioned anywhere in the Arizona Revised Statutes, and it... Just tell me what it is. Is it a corporation? Is it a 501c3? Is it... What is it? It's an archive for the Ansel Adams Publishing Rights Trust intellectual property. Legal status. Does it have a separate legal status? It does not have a separate legal status. The board has a separate legal status as a body corporate, as is stated in the Arizona Revised Statutes 15-1625. Is the complaint that I'm supposed to be looking at, the First Amendment counterclaim, is that the right one? Yes, Your Honor. Does it even name this entity? It does not name the center. It names the university. Well, then, why isn't the case over? It doesn't even name this entity. Because it's... That's suing it. It's a... It's a non... It's been deemed a non-jural entity. And so we named the university because that was the only party that we legally, I think, could name. But that, in and of itself, would not... That's not dispositive of the matter of Eleventh Amendment immunity. The CCP, it publishes an annual report, and it's in the record, and it says that it is in charge of repaying its debts to the university. And if you look at some of the language in the Supreme Court's decision in Hess, the Court pointed out... Non-jural entity, you can't sue it. I mean, that's another... I mean, one way or another, you can't sue this thing. Your Honors, even if we look at the immunity exclusively, at the question of immunity with respect to the Arizona Board of Regents, and we consider the CCP to be part of the activities of the Board, that alone would not be sufficient under this Court's holding in Mitchell and under many other holdings by the Supreme Court, this circuit and other circuits, to deem as a matter of law that the University of Arizona is immune. Nothing in this Court's decisions in Ronwin v. Shapiro or Rutledge v. the Regents... So ultimately, because you didn't sue CCP, your position is that the University of Arizona itself is sometimes protected by the Eleventh Amendment, but other times not. Not just that there are subdivisions or subentities that might be split off. Well, yes. I mean, to the extent that we agree with the principle that this Court stated in Doe v. Lawrence Livermore, and I'm aware that the Court was reversed on a discrete question of law, but it did state in that case that a university can be deemed immune for some of its activities, but not all of its activities. And other circuits have recognized that principle. The Sixth Circuit has recognized that in the Sony case, and the Eighth Circuit has recognized that in the Sherman case. Well, let me ask you a question. Mitchell sets forth five factors, right? Yes. And you're saying that under those factors, the CCP is not an entity of the state. So could you just run through those? Would a money judgment be satisfied by state funds? That's an... At this point, there is evidence on the record to show that the CCP generates its own revenues and is responsible to paying back debts to the university. Those are both facts that this Court should consider under an analysis of the Mitchell factors. I thought the Supreme Court said that's rather irrelevant. No, the Supreme Court... I thought the Supreme Court said what's relevant isn't whether ultimately the Eleventh Amendment entity is going to pay it. It's whether it's going to have liability. Didn't it say that? It recognized that as an important factor, but it also said that that is not a conclusive. I don't believe that is a conclusive or dispositive element of the Eleventh Amendment analysis. The Court in Hess explicitly recognized that an entity's ability to discharge its own debts is something that should be considered. And even in the Supreme Court's decision in the Regents' case, it noted in footnote two of that case that this Court had recognized the principle that a university can be deemed immune for some activities and not all activities. And it did not refute that principle or treat that principle negatively in any manner. What happened with the... I mean, it strikes me that one of the problems we have here, if in fact you're going to be able to demonstrate that this is a different situation from the ones in our earlier cases, which we haven't talked about at all, but there are two cases having held that the Board of Regents of the University of Arizona is left with the Amendment protected, and you're arguing but not in this instance. So what about the... We have a very thin record, and you asked for some discovery, and you didn't get it. What is that situation? The situation is, Your Honor, is that we believe that, as you allude to, that the record is not developed enough to perform a conclusive analysis under this Court's holdings. And when and how did you ask for the discovery? We asked for the discovery in our motions that we submitted to the lower court. We asked in our opposition to the State's motion to dismiss that, at the very least, we should be allowed an opportunity to conduct additional discovery in this case and really find out. And the district judge said no because, per se, the University of Arizona can't be sued? Or what did he say? The district court stated that under this Court's holdings in Ronwin v. Shapiro and Rutledge v. Board of Regents of Arizona, that it was compelled, as a matter of law, to conclude that the University benefits for Eleventh Amendment immunity. And the court did not apply any of the factors set forth in Mitchell. It was presented with some evidence in the record, for example, the fact that the CCP only devotes 4% of its gross expenditures to education, and that it's capable of generating its own revenues, and that it has to repay debts to the University. I mean, those kinds of facts that you're talking about now seem to be true of many departments of the University. I mean, many subdivisions and departments get grants, and there are whole professorships that are funded, a whole professor who are basically paid by outside people, and so on. So that doesn't seem terribly helpful. But the arrangement under the contract that was the initiating document for the birth of the CCP contemplates a share of gross royalties from the Ansel Adams Publishing Rights Trust, 10% gross royalties from Ansel Adams and the CCP. But there are all kinds of specialized behests to universities. I'm sorry? There are all sorts of specialized behests to universities and trusts that pay money to certain people for certain purposes and not other purposes. Certainly, Your Honor. But I think we have to also look at what is the percentage of money that the CCP receives from the government or from the university, as opposed to what it receives from private funds. And in its annual report, it says that it receives 77% of its funding from the university, slash, the state, slash, the foundation. And the foundation is an unaffiliated entity from the university. So what component of that 77% is private? And again, even if we concede that the majority of the money it is granted comes from the university or from the board, that factor alone is not dispositive under the Mitchell analysis. You know, you wanted to save time, Your Honor. Yeah, I know. 42 seconds. I know. So I'd like to reserve that for rebuttal, please. Thank you very much. Thank you. May it please the Court. My name is Kathy Stewart. I'm an assistant attorney general from the State of Arizona. And I'm here on behalf of the nominal defendants, the University of Arizona, its governing board, ABOR, and most importantly, the real party in interest, the State of Arizona, because the most salient, undisputed fact is that the State  of Arizona would be legally liable for a judgment on the claims asserted in this case. And Your Honor asked an excellent question. What are we doing here? The university was the party that the counterclaimants chose to sue. I want to say that I had not focused on that and I don't understand what we're doing here, because the CCP is not a party to this case as such. Correct. Even nominally. It is. It's not even a nominal party. And I suggest that the reason the holdings in Ronwin and Rutledge have never been questioned since in a suit against the university is because it is clearly established. Well, both our opinion in Lawrence Flabb's case and the Supreme Court's recognizes that, it seems to me, that it isn't necessarily a per se answer. You don't sort of get one answer for life. In all fairness, the case, the Doe case was actually filed against the Lawrence laboratories. Right. In name. Right. And so there was some question, is this laboratory in that case owned by the DOE, not even owned by the State? Is it perhaps not an arm of the State? And we got that answer in the Supreme Court. So the essential facts here are undisputed. The State of Arizona is legally liable. It's odd that we're here even arguing about that since undoubtedly that was the reason for naming the university was the hope that their complaints would ultimately be collectible against the State of Arizona. Then the 11th Amendment is raised and we find ourselves in this backpedaling notion that, well, maybe the CCP has some connection with these outside entities. We're not here with the trust trying to argue that because of its relationship to the university, it should have 11th Amendment immunity. We're here defending the notion that the University of Arizona is not a general entity to begin with. Its governing board, the Arizona Board of Regents, has clearly been determined to be an arm of the State and entitled to 11th Amendment immunity. And I don't think there needs to be anything more said than that unless this Court has some questions. Thank you. Your Honors, I think the Court might consider what would have happened if we named the Center for Creative Photography as a defendant in this case. The same results, we would still perhaps be here today because the State would still step in and say that the CCP is part of the board and the board is part of the university and the university is part of the board. Well, no, but the two are certainly tied together. I mean, the fact that this thing doesn't have any independent existence is at least a good part of the reason why it is part of the university is entitled to immunity for it. It doesn't exist separately. I mean, there are entities that are affiliated with universities but have separate existences. This one doesn't. I'm out of time. May I answer? Yes, please. Even if we look at the Eleventh Amendment immunity of the Board of Regents alone and we apply its circumstances to the factors in the Mitchell case, there is cause for pause in this case and there is no reason that this Court's decisions in Ronwin at Rutledge compel the conclusion that the board or the university would be immune as a matter of law for all of activities. And if we concede that the CCP is one of the activities of the university and the university must consider all of its activities. I see. Thank you very much. Thanks to the parties for their arguments in Anselm.
judges: Smith, Fernandez, Berzon